IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) TRACEY SHELLEY<br>(2) RBH SALES, LLC,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>(1) HARTFORD UNDERWRITERS<br>　　INSURANCE COMPANY,<br><br>　　　　Defendant. | Case No. 25-CV-504-JFJ |

## **OPINION AND ORDER**

Before the Court is Defendant Hartford Underwriters Insurance Company's ("Hartford") Partial Motion to Dismiss (ECF No. 17). The parties have consented to a magistrate judge presiding over the case (ECF No. 19). For reasons explained below, the Partial Motion to Dismiss is granted, and Plaintiffs' claim for intentional infliction of emotional distress ("IIED") is dismissed with prejudice.

**I.    Factual Background**

The following relevant facts are alleged in the Complaint (ECF No. 2-1). Plaintiff Tracey Shelley ("Shelley") is the sole owner and managing member of Plaintiff RBH Sales, LLC ("RBH") (together, "Plaintiffs"). Compl. ¶ 2. At all relevant times, Shelley held an insurance policy written by Hartford that insured her and RBH. *Id.* ¶¶ 15-16. RBH buys "hard-to-find" items and re-sells them online, and part of RBH's inventory was stored at Shelley's home. *Id.* ¶¶ 7, 9. On August 27, 2022, a fire destroyed Shelley's home and approximately one-fourth of RBH's inventory. *Id.* ¶¶ 10-11. Immediately thereafter, Shelley opened a claim with Hartford under her insurance policy. *Id.* ¶ 19. However, Hartford did not pay "the actual value of the inventory at the time of loss (i.e., the estimated retail price)." *Id.* ¶ 20. Instead, it reimbursed Shelley for the purchase

price of the destroyed inventory. *Id.* Further, Hartford delayed in tendering the payment, which forced Shelley to mitigate RBH's business income losses herself by taking out loans to replenish the lost inventory before the 2022 holiday season. *Id.* ¶¶ 21-22.

Hartford also delayed its consideration of Shelley's lost business income claim, providing its first valuation of RBH's lost business income in December 2023, sixteen months after the fire. *Id.* ¶¶ 25-26. Hartford's eventual valuation found no loss in business income, which Shelley believed was incorrect. *Id.* ¶¶ 27, 29. For at least the next two years, Shelley engaged in a series of requests for reconsideration and explanation from Hartford. *Id.* ¶¶ 29, 33, 38, 40. She also retained a forensic accounting and loss assessment firm to provide an independent valuation, in hopes of persuading Hartford to increase its valuation. *Id.* ¶¶ 31-33. In response to her efforts, Hartford increased its valuation three times. *Id.* ¶¶ 36, 39, 46. On other occasions, however, Hartford responded with silence or requests for tax returns. *Id.* ¶¶ 29-30, 33-35. Shelley believed Hartford's amended valuations were too low, and she expended "considerable efforts" and made "desperate attempts" to try and communicate her reasoning to Hartford. *Id.* ¶¶ 31, 40-41.

In one "desperate attempt to get someone at . . . Hartford to listen to her," Shelley made a social media post about her claim and how Hartford was handling it. *Id.* ¶ 41. In response, a Hartford employee contacted Shelley on social media, asked her to send him a direct message, and requested a phone call with her. *Id.* ¶¶ 42-43. Shelley agreed to the phone call because she believed that it would lead to progress on her claim. *Id.* ¶ 43. "However, during the phone conversation[,] [t]he Hartford[] agent/employee yelled and screamed at [Shelley], chastising and admonishing her for complaining about the way her Claim had been handled . . . ." *Id.* ¶ 44. The employee told Shelley that she received "excellent claim handling services" from Hartford and that she needed to "take down her post immediately." *Id.* The phone call left Shelley feeling

"threatened, hurt, and anxious," made her believe that Hartford would take adverse action against her claim, and caused her to suffer "pervasive anxiety." *Id.* ¶¶ 45, 47.

On August 8th, 2025, Plaintiffs filed suit against Hartford in Tulsa County District Court, asserting three causes of action: (1) breach of contract, (2) breach of the duty of good faith and fair dealing ("bad faith"), and (3) IIED. ECF No. 2-1. Subsequently, Hartford properly removed the case to federal court. *Id.*

## II.     Motion to Dismiss

On October 14th, 2025, Hartford filed its partial motion to dismiss, seeking dismissal of Plaintiffs' IIED claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief.

### A.     Rule 12(b)(6) Standard

In considering a Rule 12(b)(6) motion, the court must accept all well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the nonmoving party. *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir. 2008). A court must then determine whether these accepted facts state a facially "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* (internal quotations omitted).   "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* at 678 (citation modified).

B.     **IIED Claim**

"Under Oklahoma law, the elements of an IIED claim are: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Mengert v. United States*, 120 F.4th 696, 712 (10th Cir. 2024) (quoting *Comput. Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002)).[1] "The trial court acts as a gatekeeper regarding the outrageousness of the defendant's conduct and the severity of the plaintiff's distress." *Comput. Publ'ns, Inc.*, 49 P.3d at 735.

Hartford argues: (1) Plaintiffs have not plausibly alleged extreme and outrageous conduct; and (2) Plaintiffs have not plausibly alleged severe emotional distress.

1.     **Plaintiffs Have Not Alleged Extreme and Outrageous Conduct**

Regarding the second element of an IIED claim, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Breeden v. League Servs. Corp.*, 575 P.2d 1374, 1376 (Okla. 1978) (quoting Restatement (Second) § 46 cmt. d). "Conduct which, though unreasonable, is neither beyond all possible bounds of decency in the setting in which it occurred, nor is one that can be regarded as utterly intolerable in a civilized community, falls short of having actionable quality." *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986) (citation modified). Conduct is not deemed extreme and outrageous "if it amounts to no more than mere insults, indignities, or petty oppressions." *Daemi*

---

[1] Because this is a diversity action, Oklahoma substantive law applies to Plaintiffs' state-law IIED claim. *Yaffe Cos., Inc. v. Great Am. Ins. Co.*, 499 F.3d 1182, 1185 (10th Cir. 2007); *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994) ("A federal court sitting in diversity applies the substantive law . . . of the forum state.").

*v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1388 (10th Cir. 1991).  In making this determination, the court must "focus on the totality of the circumstances, including the nature of the conduct and setting in which it occurred."  *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1559 (10th Cir. 1995).

In the Complaint, Plaintiffs summarized Hartford's alleged extreme conduct as follows: (1) Hartford held a position of significant power and influence over Plaintiffs' financial stability; (2) Hartford's agent/employee exploited that position of power by initiating direct contract with Shelley under the guise of assisting with her claim, after Shelley made a social media post critical of Hartford; (3) the Hartford employee "berated her, yelled at her, and chastised her for voicing concerns"; directed her to remove her public statement; and attempted to silence her and deprive her of "leverage" against Hartford's delays and undervaluation of her claim. ECF No. 2 at ¶¶ 62-63.  In the response brief, Plaintiffs also focused on the call initiated by Hartford to Shelley regarding her social media post:

> Plaintiff alleges that she was screamed at on the phone by an employee of the Hartford after making a public comment about the Hartford's customer service. The employee approached Plaintiff publicly, in a way that made her believe he wanted to help her, convincing her to get on a phone call in the first place. The employee then yelled and screamed at the Plaintiff, chastising her for complaining publicly about the Hartford, told her she had nothing to complain about, and ordered her to take down her social media post immediately. Plaintiff felt embarrassed, threatened, hurt, anxious, harassed, and devastated as a result of the unexpected berating.

ECF No. 20 at 7.  Plaintiffs emphasized that the IIED claim is not based on the same allegations as the bad-faith claim. *Id.* at 10 (arguing that bad-faith claim "is based on Hartford's unreasonable investigation and evaluation of her claim," while the IIED claim "is based on the conduct of its

5

public relations and/or customer service department contacting her and screaming at her in response to a public comment critical of the Hartford").²

Based on these allegations and arguments, the issue is whether the Hartford employee's conduct of initiating a chastising and berating phone call to Shelley after she made a critical social media post about Hartford, and then directing her to remove the post, may reasonably be considered extreme and outrageous conduct for purposes of an IIED claim. In deciding this issue, the Court considers the overall context of an ongoing property claim dispute with Hartford that has allegedly caused Plaintiffs severe financial and business hardship.

Plaintiff cannot state a claim for relief as to the second element. The Oklahoma Supreme Court's leading case on IIED is instructive. In that case, the defendant collection companies had mailed three letters to the plaintiff at her home address; mailed three letters to the plaintiff at her place of employment; made sixteen attempts to contact plaintiff by telephone, both at home and at her place of employment; and had one telephone conversation with the plaintiff during reasonable hours, where the company representative called the plaintiff "a God damned liar and deadbeat." *See Breeden*, 575 P.2d at 1378. The court affirmed the grant of summary judgment in favor of the collection companies because "the number of calls and letters were not excessive, nor were the calls made at unreasonable times, nor was the inconsiderate language so outrageous or extreme as to give rise to liability." *Id.* Similarly here, Plaintiffs allege that a Hartford employee initiated a

---

² Plaintiffs have alleged conduct beyond merely delaying or wrongfully failing to pay an insurance claim. *Cf. Armstrong v. Health Care Serv. Corp.*, No. 22-CV-377, 2023 WL 359519, at *5 (N.D. Okla. Jan. 23, 2023) (dismissing plaintiff's IIED claim because "[t]he denial of an insurance claim is an ordinary part of the relationship between an insurer and insured"); *Hightower v. USAA Cas. Ins. Co.*, No. 16–CV–274, 2017 WL 1347689, at *4 (N.D. Okla. Apr. 7, 2017) (dismissing IIED claim because the allegation that insured "failed to pay them the full amount under their insurance policy does not rise to the level of extreme conduct required under Oklahoma law"). The Court's ruling is based on analysis of the additional, specific conduct alleged, which includes harassing and berating conduct during a phone call initiated by a Hartford employee.

harassing and berating phone call to an adult insured during an ongoing insurance dispute. The call occurred on one occasion, it was during normal hours, and there is no allegation that the Hartford employee used insults or slurs. The facts alleged are similar to or less severe than facts presented in *Breeden* and do not support an IIED claim. The facts are also distinguishable from cases in which belittling or harassing language is directed at a minor. *See Durham v. McDonald's Rests. of Okla., Inc.*, 256 P.3d 64, 67-68 (10th Cir. 2011) (holding that reasonable jury could decide that supervisor's one time use of a curse word and a slur was extreme and outrageous when directed to minor plaintiff); *Stepp v. Talihina Pub. Sch. Dist.*, No. 6:24-cv-146, 2025 WL 1139471, at *9-10 (E.D. Okla. 2025) (holding that teacher's sustained use of "derogatory language, homophobic slurs, and belittling tactics" toward eleven year old student plausibly alleged extreme and outrageous conduct).

      The Hartford employee's instruction to remove the post, even if designed to intimidate Shelley as an insured, was not accompanied by physical threats or any type of ongoing, harassing conduct. This single instruction from the Hartford employee during an isolated phone call, even if an unsavory and unprofessional business tactic, also cannot be deemed "extreme or outrageous conduct" directed to an insured. *See Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 942 (10th Cir. 1994) (affirming grant of judgment as a matter of law in favor of insurer on IIED claim, where insurer, *inter alia*, advised plaintiff not to hire a lawyer, continually asked for more information, failed to return calls and keep appointments, and purposefully prolonged the claims process) ("While State Farm may have exhibited a lack of tender solicitude for [the plaintiffs], clearly its conduct did not amount to the type of harassment and threats that could be considered extreme and outrageous."); *Setzer v. Farmers Ins. Co.*, 185 F. App'x 748, 755 (10th Cir. 2006) (holding that defendant's request for plaintiff's gynecological records outside of her authorization

was "sloppy[,] or even intimidating[,]" but was not sufficiently outrageous in the context of claims handling); *Schultz v. Allstate Ins. Co.*, 764 F. Supp. 1404, 1411 (D. Colo. 1991) (applying Colorado law) (holding that where an insurer misrepresented its coverage, delayed communication and payment, and denied and undervalued claims, and one of the insurer's agents was "repeatedly very nasty" to the plaintiffs, there was not, as a matter of law, outrageous conduct).

Plaintiffs' cited cases are unpersuasive. Plaintiffs rely on *Johnson v. State Farm Fire & Cas. Co.*, No. 19-CV-250, 2019 WL 5388521, at *5 (N.D. Okla. Oct. 22, 2019), in which the court denied a motion to dismiss an IIED claim against an insured. In that case, the insureds alleged that an insurance company employee "*repeatedly* berated, belittled[,] and chastised them throughout the claim process." *Id.* at *4 (emphasis added). The insureds further alleged that the insurance company employee accused them of lying in order to "oppress" them. *Id.* The employee ultimately threatened to "take back monies already paid" if the insureds did not accept the claim evaluation. *Id.* Plaintiffs also rely on *Computer Publications, Inc. v. Welton*, 49 P.3d 732 (Okla. 2002). In that case, the plaintiff produced evidence that the defendant, her previous employer/boss with whom she had an intimate relationship, "harassed" her "virtually non-stop" for two years. *Id.* at 736. The defendant had engaged in a variety of consistent harassing behaviors, such as calling her landline and cellphones, leaving voicemails, sending e-mails, mailing letters, and sending flowers and gifts to persuade the plaintiff to resume working for him and engaging in a relationship. *Id.* Further, the defendant went to the plaintiff's new workplace to put letters in her car, drove slowly past her house, and showed up at restaurants where she was eating. *Id.* The court held that the plaintiff produced sufficient evidence of extreme and outrageous conduct to warrant submission of her IIED claim to the jury. *Id.*

8

Here, the facts do not involve any similar pattern of harassment or oppression but instead involve harassing behavior during an isolated phone call.  Although Plaintiffs allege that Hartford wrongfully undervalued and underpaid their claims over an extended time, they do not allege any repeated harassing or verbally abusive conduct during the claims-handling process such as that alleged in *Johnson* or *Computer Publications*.  Instead, Plaintiffs primarily complain that Hartford engaged in delay and took no actions during this extended time.  Considering the totality of circumstances, the conduct cannot be deemed a sustained or persistent campaign to cause Plaintiff distress.  *See Starr*, 54 F.3d at n.7 (contrasting "episodic" events in that case with the "sustained, persistent, and orchestrated campaign to embarrass and humiliate the plaintiff" in other cases where courts permitted IIED claims to proceed).  Further, while Plaintiffs allege the Hartford employee implied negative consequences for failing to remove the post, this is far less outrageous or severe than an explicit threat to take back money already paid to an insured.  The isolated phone call, even in conjunction with the alleged bad-faith claims handling, is not sufficient to support an IIED claim.

### 2.     Plaintiff Has Not Alleged Severe Emotional Distress

The fourth element of an IIED claim "requires proof that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." *Comput. Publ'ns, Inc.*, 49 P.3d at 736 (quoting *Breeden*, 575 P.2d at 1377-78 n.6) (citation modified). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity." *Mengert*, 120 F.4th at 712 (quoting Restatement (Second) of Torts § 46 cmt. j).  "[F]actors for determining whether emotional distress is sufficiently severe include: whether the plaintiff experienced physical symptoms as a result of the distress; whether the

plaintiff sought medical attention for either physical symptoms or the emotional distress itself; and whether the distress caused a disruption to the plaintiff's daily affairs." *Id.* at 713.

Here, Plaintiffs allege that Shelley felt "threatened, hurt, and anxious," and "believed [the phone call] would result in . . . Hartford taking adverse action against her in its handling of her [c]laim." Compl. ¶ 45. As an initial matter, Shelley's alleged distress resulted from an isolated phone call, which weighs against a finding of severe emotional distress. *See Morales v. L. Firm of Michael W. McDivitt, P.C.*, 641 F. Supp. 3d 1035, 1040 (D. Colo. 2022) (applying Colorado law) ("There is far less risk of emotional distress occurring over the phone than in person."). Further, Plaintiffs did not allege any facts supporting the last two relevant factors – namely, that Shelley sought medical attention or that emotional distress disrupted her daily affairs. Although not dispositive, this contributes to the Court's finding that Plaintiffs cannot prove the fourth element of an IIED claim. *See Doe 1 v. Mount Saint Mary High Sch. Corp. of the State of Okla.*, No. CIV-22-992, 2025 WL 490011, at *9 (W.D. Okla. Feb. 13, 2025) (dismissing six of the eight plaintiffs' IIED claims because those plaintiffs' allegations that they felt shame, embarrassment, and unsafe did not plausibly allege severe emotional distress); *Morris v. City of Sapulpa*, No. 19-CV-0376, 2011 WL 1627098, at *15 (N.D. Okla. Apr. 28, 2011) (granting summary judgment to defendant and explaining that being "anxious, mildly agitated, depressed, [and] apprehensive" cannot establish severe emotional distress). *Cf. Doe 1*, 2025 WL 490011, at *9 (holding that two plaintiffs who made allegations such as "panic attacks and night terrors," "seeking therapy," suffering grades, transferring schools, becoming isolated, and losing friendships plausibly alleged severe emotional distress); *Comput. Publ'ns*, 49 P.3d at 736-37 (evidence that plaintiff lost weight, developed rashes, and was scared daily was sufficient to warrant submission of IIED claim to

jury); *Durham*, 256 P.3d at 68 (evidence that plaintiff became withdrawn, reclusive, depressed, and slept all day was sufficient to reach jury on IIED claim).

### III.     Conclusion

Defendant Hartford Underwriters Insurance Company's Partial Motion to Dismiss (ECF No. 17) is **GRANTED**.[3]  Plaintiffs Tracey Shelley and RBH Sales, LLC's IIED claim (Count III) against Hartford is **DISMISSED WITH PREJUDICE** pursuant to Federal Rule of Civil Procedure 12(b)(6).

**SO ORDERED** this 12th day of January 2026.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

---

[3] Hartford requests that the Court deny Plaintiffs' leave to amend their Complaint.  Plaintiffs have not requested leave to amend, and the Court need not address Hartford's request.